Honorable Judge Timothy W. Dore
Chapter 11
Hearing Location:  Seattle- Courtroom 8106
Date:  **January 13, 2012**
Hearing Time:  11:00 a.m.
Response Due:  **January 6, 2012**

# UNITED STATES BANKRUPTCY COURT
## FOR WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| In re: | Chapter 11 |
| SCOTT BANCHERO, | Case No.:      11-12340 |
| Debtor. | **Adversary Proceeding No.  11-01542 - TWD** |
| MICHAEL YERKOVICH, | |
| Plaintiff | **DEFENDANT SCOTT BANCHERO'S MOTION FOR SUMMARY JUDGMENT (FRCP 56, BR 7056-1)** |
| v. | |
| SCOTT BANCHERO, | |
| Defendant. | |

In accordance with FRCP 56 and BR 7056-1, the debtor/defendant, Scott Banchero ("Banchero") respectfully submits this motion for summary judgment to dismiss this adversary proceeding with prejudice upon the grounds that no genuine issue exists with respect to any material fact and thus Banchero is entitled to dismissal of this action with prejudice.

## I.      STATEMENT OF UNCONTROVERTED FACTS

In accordance with BR 7056-1(b)(1), movant's statement of uncontroverted facts is submitted with this motion.

BANCHERO'S MOTION FOR SUMMARY
JUDGMENT
CASE NO. 11-01542 - TWD -                                          1

**Eric Zubel** PC
_____
A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA  98104
Tel (206) 447-1445

Case 11-01542-TWD      Doc 34      Filed 12/15/11      Ent. 12/15/11 16:58:24      Pg. 1 of 11

## II.  INTRODUCTION AND PROCEDURAL HISTORY

On August 13, 2009, Michael Yerkovich ("Yerkovich"), acting both in a derivative and an individual capacity, commenced an action in King County Superior Court, Washington, Case No. 09-2-29940-4 (the "state court action").  The complaint alleges eight causes of action against Banchero, individually and Pinnacle Processing Group, Inc. ("PPG"), derivatively.  An authentic copy of the verified complaint is attached to the declaration of Zubel filed in support of this motion.  The first cause of action alleges a breach of contract stating:

> *"4.4    Mr. Yerkovich and Mr. Banchero, individually and on behalf of PPG, agreed by way of the Amendment to Contract that each of them would receive 50% of PPG's net profits.*
>
> *4.5    Mr. Banchero, individually and on behalf of PPG, breached the oral agreement between himself and Mr. Yerkovich that each of them receive an equal salary by, without limitation, paying himself an excessive salary for the years 2007 and 2008, and by characterizing compensation due and owing to Mr. Yerkovich as advances in 2007; and then claiming advances as income to Mr. Yerkovich during 2008. As a result, Mr. Yerkovich's tax liability exceeded his income for 2008.*
>
> *4.6    Mr. Banchero, individually and on behalf of PPG, breached the Amendment to Contract by, without limitation, paying himself an excessive salary for the years 2007 and 2008.*
> See Ex. A, p. 7, Dec. Zubel.

In addition, in the eighth cause of action, Yerkovich sought declaratory relief asking that the court declare his rights *" . . . under the amendment to contract to determine, without limitation, the amount of PPG's net profits due and owed to him."*  [See Ex. A, p. 12, ¶11.3, Dec. Zubel.]

This adversary case was filed on June 10, 2011.  In his capacity as an unsecured creditor, Yerkovich is objecting to the discharge of $406,883.16 which he alleges he has suffered for financial harm caused by Banchero on account of Banchero's defalcation while acting in a fiduciary capacity.  This claim consists of (1) the sum of $254,746.89 representing the judgment entered in favor of Yerkovich against Banchero in the state court action, and (2) net profit distributions in the sum of

BANCHERO'S MOTION FOR SUMMARY
JUDGMENT
CASE NO. 11-01542 - TWD -                                    2

**Eric Zubel** PC
_____
A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA  98104
Tel (206) 447-1445

Case 11-01542-TWD     Doc 34     Filed 12/15/11     Ent. 12/15/11 16:58:24     Pg. 2 of 11

$68,564.50 and $86,512.17 which Yerkovich claims are owed to him from his share of the profits of PPG for the calendar years 2009 and 2010 respectively. The complaint in this case alleges and repeats *verbatim* the findings of fact and conclusions of law signed by the Honorable Bruce Hilyer in the state court action. The complaint also alleges that Banchero should be denied a discharge with respect to these claims according to 11 U.S.C. § 523(a)(4).

For the reasons set forth below, the state court judgment is dischargeable under applicable bankruptcy law. With respect to the 2009 and 2010 net profit distributions to which Yerkovich claims he is entitled, these claims are barred by the doctrine of *res judicata*.

### A.    Findings of Fact

The case was tried to the court between February 2 through February 8, 2011. On February 11, the court entered findings of fact and conclusions of law. [Ex. B, Declaration of Zubel.] The court found that as a result of a 2006 amendment to a 2003 shareholder agreement between the parties, Banchero "lacked the authority to set the salaries for himself and Yerkovich as that authority was referred to by the PPG By-Laws, Article IV to the Board of Directors, and despite his attempts to appoint himself, Banchero was never on the Board of Directors." [Ex. B, p. 10, ¶14, Dec. Zubel.]

The court also found that:

*"17. The 2006 Contract eliminated the salary for both Banchero and Yerkovich, and deleted the above Sections 8.2 and 8.3 in their entirety, and replaced them with the following new sections 8.2 and 8.3:*

*New 8.2  Distributions of Net Profits shall be made in the most advantageous manner under the advisement of the Tax Preparer retained by "PPG"*

*New 8.3  The Division of Net Profits shall be an equal division, with both "SB" and "MY" receiving a 50% share*

*18. In 2007, 2008 and previously, "Banchero distributed PPG's cash transferred funds directly to himself and Yerkovich and in some cases to directly to his creditors based upon cash flow. As is the practice in many closely held firms, these amounts were initially*

BANCHERO'S MOTION FOR SUMMARY
JUDGMENT
CASE NO. 11-01542 - TWD -                                    3

Eric Zubel PC
A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Tel (206) 447-1445

Case 11-01542-TWD    Doc 34    Filed 12/15/11    Ent. 12/15/11 16:58:24    Pg. 3 of 11

*classified as "loans" on PPG's corporate records. There were no loan documents for these loans, and there was no interest paid on these loans. At the end of the year, Banchero alone would decide how much of the loans would be classified as salary, or loans, or remain as profit distributions for both himself and Yerkovich. PPG was converted into an S Corporation on the same day the 2006 Contract was signed which eliminated the risk of double taxation since the income of the corporation is passed through to the shareholders."* [Ex.B, p. 11, ¶17 and 18, Dec. Zubel.]

The court then performed an analysis of salary distributions which Banchero and Yerkovich received for the calendar years 2007 and 2008. The court found:

*"19. Banchero set his own salary at $300,000 for 2007 and $450,000 for 2008 while setting Yerkovich's at $100,000 for 2007 and $275,000 for 2008. Further, since Yerkovich's 2007 salary was set so low relative to the cash that had been disbursed to him the effect was to push his tax liability forward into 2008. While Yerkovich did sign his personal IRS Form for 2007 which showed his $100,000 salary that did not put him on notice that Banchero had paid himself $300,000. Nor did he know that the next year, all of the 2007 loans would be included in his 2008 income such that he got about $128,000 in distributions but would have to pay tax on about $275,000. But in 2008, Banchero did not extend the PPG "loans" to Yerkovich any longer, and Yerkovich having no notice or knowledge of Banchero's decisions, failed to request adequate withholding to prepare for his tax liability from income attributable to 2007 and 2008. However, while Banchero had in theory the same tax problem, he used his control over PPG's funds to insure that he had no tax problems and instead had PPG pay about $104,000 of his tax liability directly to the IRS. Worse still, he did not even carry this "loan" on PPG's books; it just doesn't appear on the "loan to Scott" spreadsheet for 2008. Obviously aware of how this looked, on the last day of trial he acknowledged this was an "error of judgment" and stated he intended to pay it back to PPG. But Banchero's unequal treatment of himself and Yerkovich was more than a mere error of judgment, it was a series of deliberate acts of corporate self-dealing and misuse of use of corporate resources."* [Ex. B, p. 12, ¶19, Dec. Zubel.]

The court acknowledged that " . . . *[P]laintiff presented two alternative summaries of damages.*" [Ex.___, p. 13, ¶25, Dec. Zubel.]

The court then made an arithmetic calculation of the amount to which Yerkovich was entitled for his "share" of PPG's "total profits." Finding 26 provides:

*"26. Taking into account the funds received by both parties, as Plaintiffs have pointed out should be considered, results in the following damages calculations: In 2007, Pl (sic) got distributions of $292,633.94 and Banchero received $347,657.24, for total profits of $640,291.18. Under the 2006 Contract, Yerkovich was owed 50 % of that amount = $320,145.59 which means that Banchero owes him $27,511.65 over*

**Eric Zubel** PC

A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Tel (206) 447-1445

*the distributions already received, plus prejudgment interest a 12% per annum (1% per month) since December 31, 2007 for 37.5 months = $10,316.87 In 2008, Yerkovich received distributions of $128,432.40 and Banchero received $450,000 (including the $104,000 he acknowledges he would otherwise owe PPG for his 2008 IRS taxes, and allowing him to carry forward his loan balance of $53,973.01 which Plaintiffs did not contest) for total PPG net profits of $578,432.40 on which Yerkovich was owed 50%= $289,216.20 which means he is owed an additional $160,783.8 plus interest since December 31, 2008 for 25.5 months = $40,999.87. The total of damages awarded is therefore $239,612.19. This compares relatively closely with Yerkovich's expert opinion that damages were between about $241,000 and $246,000."*
[Ex. B, p. 14, ¶26, Dec. Zubel.]

## B. Conclusions of Law

The court made the following conclusions of law interpreting the 2003 and 2006 agreements in light of the parties' performance. The court concluded,

> *"A. Breach of Contract*
>
> *1. Banchero and Yerkovich entered a binding contract in 2006 to split PPG's profits 50/50 in. The method of such distribution was to be determined in consultation with PPG's accountant to make it tax advantageous to all concerned.*
>
> *2. The actions of Banchero in setting his own salary at $300,000 in 2007 and $450,000 in 2008, while setting Yerkovich's at $100,000 in 2007 and $275,000 in 2008 were in breach of the 2006 Contracts.*
>
> *3. The 2006 Contract did not permit Banchero to unilaterally set salaries or to set salaries more favorable to him than to Yerkovich. The actions of Banchero in unilaterally determining that the amounts advanced to Yerkovich to be treated as loans instead of salary were in violation of the 2006 Contract.*
>
> *4. To remedy the breach of contract by Bacnhero (sic), Yerkovic (sic) is entitled to an award of damages, including prejudgment interest of $239,912.19." ."* [Ex. B, p. 15, ¶1-4, Dec. Zubel]

The court also concluded that the 2006 contract would not allow Banchero to unilaterally distribute the profits of PPG by setting salaries as this would *" . . . frustrate the purpose of the 2006 contract which was to treat both shareholders equally."* [Ex. B, p. 15, ¶5, Dec. Zubel] From this premise the court concluded:

BANCHERO'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 11-01542 - TWD -                5

**Eric Zubel** PC
_____
A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Tel (206) 447-1445

Case 11-01542-TWD    Doc 34    Filed 12/15/11    Ent. 12/15/11 16:58:24    Pg. 5 of 11

"6.      Banchero's position that it is unfair to enforce the 50%/50 % split agreed upon by the parties of the net profits because it fails to recognize his more important executive services to PPG in 2007/2008 is an unreasonable interpretation of the 2006 Contract to which he agreed. If the parties had conferred upon the issue of the salaries, and made some adjustment to recognize the greater value of Banchero's labors, the court could certainly enforce such a modification. But the Court must enforce the Contract as written by the parties and it was up to them to determine if they wanted to set their financial awards by the value of their labor or by the value of their equity stakes. To adopt the Defendant's view of what is a "fair" reading of the contract, would require the court to rewrite the contract to allow Banchero to set salaries at whatever amount he chose, but the court must interpret the Contract as they wrote it not how their trial counsel wish it had been written. Nor can the Court speculate on whether or why Yerkovich would ever have agreed to surrender such an important power to Banchero. To use the metaphor of Banchcro's (sic)  counsel, it is not up to the court to prevent the parties from contracting to allow one or both to sit on the beach and split the proceeds based on a preset 50/50 formula at the end of the year. While such an arrangement might seem odd, it is less so than Defendant's contention that he had the authority under the 2006 Contract to set the salaries in a way that lavishly rewarded him and eviscerated the manifested intention in the Contract to split the financial rewards of PPG equally."  [Ex. B, p. 15, ¶5, Dec. Zubel]

Nowhere in the findings or conclusions is there any reference to any misappropriation or defalcation of the proceeds of an express trust.  This is because the Court based its judgment by concluding as a matter of law that the damages to which Yerkovich was entitled were based upon Banchero's *breach of contract*.

## III.    ISSUES PRESENTED

The following issues are presented by this motion for summary judgment:

1.      Whether Banchero is entitled to an order dismissing this case with prejudice upon the grounds that the plaintiff can prove no set of facts entitling him to relief under 11 U.S.C. § 523(a)(4), because Banchero was not acting in a "fiduciary capacity" in connection with an express or technical trust;

2.      Whether Yerkovich's claims for 2009 and 2010 net profit distributions are barred by the doctrine of *res judicata*.

////

BANCHERO'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 11-01542 - TWD -                    6

**Eric Zubel** PC
_____
A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Tel (206) 447-1445

## IV. ARGUMENT

**A. *The plaintiff can prove no set of facts entitling him to relief under 11 U.S.C. § 523(a)(4), because Banchero was not acting in a "fiduciary capacity" in connection with an express or technical trust.***

The definition of "fiduciary capacity" in the discharge exception for fiduciary fraud or defalcation is a question of federal law under 11 U.S.C. § 523(a)(4). The Ninth Circuit has adopted a narrow definition of "fiduciary" for purposes of the discharge exception for fiduciary fraud or defalcation. The fiduciary relationship or fiduciary capacity must be one arising from an express or technical trust that was imposed *before* and without reference to the wrongdoing that caused the debt. In defining the term "fiduciary" for purposes of the discharge exception for fiduciary fraud or defalcation, while governed by federal law, the Ninth Circuit has held that courts may rely in part on state law to ascertain whether the requisite trust relationship exists. *See, In re Gregory Dewitt Cantrell, 329 F.3d 1119 (9th Cir. 2003)*. In that case, a state court judgment was entered as a final judgment against the debtor found to have been engaged in fraudulent conduct in his capacity as a corporate officer. While the debtor was collaterally estopped from re-litigating that issue in bankruptcy, he was not collaterally estopped from contesting whether the (default) judgment was dischargeable.

In applying California law, the court held that a corporate officer is not a "fiduciary" within the meaning of the discharge exception for fiduciary fraud or defalcation. Notwithstanding the fact that under California law officers owe fiduciary duties in their capacities as agents of a corporation, they are not *trustees* of a statutory trust with respect to corporate assets.

While *Cantrell* was decided by applying the definition of "fiduciary" under California law, the same result is reached under Washington law. Cited with approval in *Cantrell* is *Alexander and Alexander of Washington, Inc. v Hultquist, 101 B.R. 180 (9th Cir. BAP 1989)*. In *Hultquist*, the debtor

BANCHERO'S MOTION FOR SUMMARY
JUDGMENT
CASE NO. 11-01542 - TWD -

7

**Eric Zubel** PC

A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Tel (206) 447-1445

Case 11-01542-TWD   Doc 34   Filed 12/15/11   Ent. 12/15/11 16:58:24   Pg. 7 of 11

sold a life insurance policy on behalf of his personal corporation and personally received a $20,000 commission. In dismissing the employer's non-dischargeability claim brought pursuant to 523(a)(4) on the basis of an alleged pre-existing fiduciary duty, the BAP affirmed Judge Glover by holding that because no express trust existed between the employer and the debtor, application of Washington case law that corporate officers owe a "fiduciary duty" to the corporation does not fall within the definition of fiduciary under 523 (a)(4) in the absence of a pre-existing or statutorily created trust at the time of the alleged wrongdoing.

The court stated that,

> "*Although the debtor may have owed a general fiduciary duty as a corporate officer under state law, no pre-existing or statutorily created trust existed at the time of the alleged wrongdoing.*" [Emphasis in original] 101 B.R. at 185.

As a matter of law, the state court judgment is dischargeable.

### B. *Yerkovich's claims for 2009 and 2010 net profit distributions are barred by the doctrine of res judicata.*

Yerkovich claims that he is entitled to recover net profit distributions from Banchero as a result of salaries which Banchero received from PPG for the calendar years 2009 and 2010. Yerkovich could have asserted these claims in the state court action, but failed to do so, having unsuccessfully attempted to include these claims during trial in the state court. *See*, declaration of Zubel, page 2, ¶ 5.

In *Soundbuilt Northwest, LLC, v. Price, 2011 WL 4929137 (Wash. App. Div. 2, October 18, 2011)*, the Court of Appeals defined *res judicata* as claim preclusion barring the re-litigation of claims and issues that were litigated, or *could have been litigated*, in a prior action. Citing *Pederson v. Potter, 103 Wn.App. 62, 69, 11 P.3d 833 (2000)*. Filing two separate lawsuits based on the same events, or claim splitting, is precluded in Washington. See *Ensley v. Pitcher, 152 Wn.App. 891, 898-99, 222 P.3d 99 (2009)*. The court went on to observe that:

BANCHERO'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 11-01542 - TWD -

8

**Eric Zubel** PC
_____
A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Tel (206) 447-1445

Case 11-01542-TWD    Doc 34    Filed 12/15/11    Ent. 12/15/11 16:58:24    Pg. 8 of 11

1

2  *"Res judicata bars such claim splitting if the claims are based upon the same cause of action. Ensley, 152 Wn.App. at 899 (citing 14A Karl B. Tegland, Washington Practice: Civil Procedure § 35.33, at 479 (1st ed.2007) (distinguishing collateral estoppel's requirement that the issue be actually litigated from res judicata's more lenient standard where issues that could have been litigated and resolved are barred))); Kelly–Hansen v. Kelly–Hansen, 87 Wn.App. 320, 329, 941 P.2d 1108 (1997) ('a matter may not be relitigated, or even litigated for the first time, if it could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding')."* At p. 3.

3

4

5

6

7  In *Pederson v. Potter, 103 Wn.App. 62, 69, 11 P.3d 833 (2000)*, the court stated that for *res*

8  *judicata* to apply, there must be a judgment "on the merits." However, as the court noted:

9  *"'It is not necessary that the litigation should be determined on the merits, in the moral or abstract sense of these words; it is sufficient that the status of the action was such that the parties **might have had their suit thus disposed of**, if they had properly presented and managed their respective cases.'" Citing, CenTrust Mortgage Corp. v. Smith and Jenkins, PC, 469 S.E.2d 466, 469 (1996), quoting Gamble v. Gamble, 48 S.E. 2d 540 (1948)."* [Emphasis Added]

10

11

12

13  Yerkovich was afforded a full and fair opportunity to litigate his claims for net profit

14  distributions for 2009 and 2010 before the state court. He failed to amend his complaint to include

15  those years and was precluded by the Court from offering any evidence that Banchero improperly

16  paid himself from PPG for those calendar years. As a result, the calendar years 2009 and 2010 are

17  not addressed in the court's findings of fact and conclusions of law. The result was the entry of the

18  judgment against Banchero covering the calendar years 2007 and 2008, which forms the sole basis of

19

20  the final judgment entered on October 17, 2011 in the amount of $254,746.89. *See* Judgment, Exhibit

21  C to the declaration of defendant's counsel.

22                                                  **V.    CONCLUSION**

23        For all of the foregoing reasons, it is respectfully requested that this Court (1) find that the

24  final judgment is dischargeable, and (2) the remaining claims for net profit distributions for the

25

26

**Eric Zubel** PC

A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Tel (206) 447-1445

1  calendar years 2009 and 2010 are barred by the doctrine of *res judicata*, and order that this case be

2  dismissed with prejudiced.

3       DATED:          December 15, 2011.

4

5                                          Moving Party,

6                                          ERIC ZUBEL, PC

7

8                                          By: _____
                                              Eric Zubel, WSBA #33961
9                                              Attorney for Defendant/Counterclaimant,
                                              Scott Banchero
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Eric Zubel** PC
_____
A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA  98104
Tel (206) 447-1445

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date recited below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> David T. Lyons
> Lyons Law Offices PS
> 1111 – Third Avenue, suite 2890
> Seattle, WA 98101
> dlyons@lyonslawoffices.com
> kbarnhart@lyonslawoffices.com
> *Attorney for Plaintiff*

DATED this _15TH_ day of December, 2011.

*Cathy Hodges*

Cathy Hodges, An Employee of Eric Zubel, PC

BANCHERO'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 11-01542 - TWD -

11

**Eric Zubel** PC

A Professional Law Corporation
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
Tel (206) 447-1445

Case 11-01542-TWD    Doc 34    Filed 12/15/11    Ent. 12/15/11 16:58:24    Pg. 11 of 11